[No. 801. September 2, 1898.]

WATER SUPPLY COMPANY OF ALBUQUERQUE, Appellant, v. CITY OF ALBUQUERQUE and BOARD OF EDUCATION OF CITY OF ALBUQUERQUE, Appellees.

### SYLLABUS BY THE COURT.

PUBLIC SCHOOLS—MUNICIPALITIES—WATER SUPPLY—INJUNCTION.—1. The public schools of the city of Albuquerque organized under the laws of 1891, are not city schools.

(a) The board of education of the city of Albuquerque, is a distinct corporation for school purposes and is not a mere function or part of the municipal government of the city.

2. Under a contract by which the Water Supply Company of Albuquerque agreed to furnish the city of Albuquerque with twelve million gallons of water every six months for "city purposes" to be used as the city council may direct. Held: that it is not a city purpose to furnish water to the board of education for the use of the public schools in the city of Albuquerque, and upon the refusal of said board to pay for the water necessary for said schools, injunction will not lie to prevent the water company from shutting off the water from the schools.

*Appeal,* from a decree for complainants, from the Second Judicial District Court, Bernalillo County. Reversed and remanded with directions.

The facts are stated in the opinion of the court.

CHILDERS & DOBSON for appellant.

Under the act creating boards of education, they are not quasi municipal corporations, but political corporations or agencies of the territory to promote the educational interests thereof. Acts Feb. 11, 1891, and Feb. 26, 1891; 1 Dill. on Munic. Corp., secs. 19-23; State v. Leffingwell, 4 Mo. 458; St. Louis v. Shields, 62 Id. 247; Heller v. Stremmel, 52 Id. 309; Knowles v. Board of Education, 7 Pac. Rep. (Kan.) 561.

The board of education, the city of Albuquerque and the water company for nearly four years construed the contract alike—that the board of education was not entitled to the free use of water, which construction by the parties interested should be given due consideration. Railroad Co. v. Trimble, 10 Wall. 367. See, also, National Water Works Co. v. School District, 23 Mo. App. 227.

It is a reasonable regulation, and the water company had the right to shut off the water from the school buildings upon receipt of the notice from the board of education that it would not pay for water used by it after February 1, 1898. Appeal of Brumm, 12 Atl. Rep. 855; People v. Gas Light Co., 45 Barb. 136; Williams v. Gas Co., 4 Am. and Eng. Corp. Cas. 66; Mosey v. Gas Light Co., 38 N. Y. 185; Insurance Co. v.

Philadelphia, 88 Pa. St. 393; Hotel Co. v. Water Co., 28 Pac. Rep. 320.

William D. Lee and Neill B. Field for appellees.

The maintenance of free non-sectarian public schools is a municipal function. 1 Dill. on Mun. Corp., sec. 183; Laws 1891, chap. 77, sec. 7, p. 138; Laws 1891, chap. 77, sec. 22, p. 141; Comp. Laws 1884, sec. 2788; Laws 1897, sec. 2402, sub-divs. 48, 66, 70; Le Contenlx v. Buffalo, 33 N. Y. 335; McDonough v. Murdock, 15 How. 403; Vidal v. Girard, 2 Id. 189; Herron v. Cary, 24 Id. 505; Kelly v. Pittsburg, 104 U. S. 81; Donnelly v. Cabaness, 52 Ga. 211.

The city purposes for which the water paid for by the city may be used include lawful purpose to which water owned by the city may be applied. Sun Printing Ass'n v. Mayor, etc., 40 N. Y. (Sup. Ct.) 611; Hequenberg v. Dunkirk, 49 Hun. 553; Wheeler v. Philadelphia, 77 Pa. St. 338; Savings Society v. Philadelphia, 31 Id. 175; Lehigh Water Co.'s Appeal, 102 Id. 515; People v. Kerr, 27 N. Y. 194; Story v. Railroad Co., 90 Id. 160; People v. Kelly, 76 Id. 475.

There is no ambiguity in the language of the contract used, and no such question as is now presented could ever have been considered or discussed by the parties to the contract until after the passage of the resolution of February 7, 1898. Consolidated Coal Co. v. Schneider, 45 N. E. Rep. 126; Childers v. Bank, 46 Id. 825; Hale v. Sheehan, 71 N. W. Rep. 1019; Davis v. Creamery Co., 67 Id. 436; Cleburne Water Co. v. Cleburne, 35 S. W. Rep. 733.

The taxpayers of the city of Albuquerque buy the water in question from the Water Supply Company, through their agent, the city council, and cause a portion of it to be supplied to their agent, the board of education. School District v. Greenfield, 64 N. H. 85; Broughton v. Pensacola, 93 U. S. 268; Whitney v. Stow, 112 Mass. 372; Merriwether v. Garret, 102 U. S. 501, 512, 513; Mobile v. Watson, 116 U. S. 289.

McFIE, J.—This is an action brought by the city of Albuquerque and the board of education of the city of Albuquerque against the Water Supply Company of Albuquerque to prevent the water supply company from shutting off the water from the public school buildings, and alleges:

That the board of education is a quasi municipal corporation created by virtue of the laws of the territory of New Mexico for the purpose of conducting and carrying on the public schools of the city of Albuquerque.

That under the terms of the contract entered into on the seventh day of April, 1894, between the city of Albuquerque and the appellant, The Water Supply Company of Albuquerque, for the supplying of water by the said water company of the city of Albuquerque, and by virtue of a resolution passed by the board of aldermen of the city of Albuquerque on the sixth day of February, 1898, the board of education claimed it was entitled to the use of water for its school buildings free.

After the passage of the resolution by the board of aldermen of the city of Albuquerque on the seventh day of February, the board of education paid for water used by it up to February 1, 1898, and on the eighth day of March, 1898, notified the water company that it would not pay for water used after said first day of February, 1898. The water company thereupon notified the board of education that in pursuance of its notice that it would not pay for water used by it after said date, said water company would shut off the water from the school buildings. This action was then brought and a temporary injunction granted. Defendant demurred to complaint, which demurrer was overruled and the injunction continued. Thereafter defendant filed an answer and upon motion of plaintiffs final decree was entered and appellant granted an appeal.

The third and fourth assignments of error bring before the court all the questions involved in the case, and are as follows:

III.  The court erred in holding that the board of education of the city of Albuquerque was a part of the government of said city of Albuquerque.

IV.  The court erred in construing the contract entered into by and between the city of Albuquerque and the water company, that the water used by the board of education was used for a "city purpose."

The real issue in this case is whether or not the Water Supply Company of Albuquerque can be compelled to furnish water for the use of the public schools within the city of Albuquerque, without compensation by said board, by virtue of the contract between the water company and the city, dated April 7, 1894.

P. BLIC schools: municipalities.

Such portions of the contract as are deemed vital in the decision of this case are as follows:

"And the said party of the first part further covenants and agrees to and with said party of the second part, to furnish to said party of the second part, during the said period of of twenty-five years, all water necessary for the extinguishment of fires and for fire purposes, free of charge, and in addition thereto to furnish free of charge twelve million gallons of water every six months during said period of twenty-five years for city purposes, to be used as the council of the said party of the second part shall direct, for the first one hundred fire hydrants rented from it by said party of the second part as hereinafter mentioned, and for each additional fire hydrant after the first one hundred rented from it by said party of the second part, to furnish free of charge to said city seventeen thousand gallons of water each month for city purposes, to be used as said city council shall direct."

It was also provided:

"And the said party of the first part hereby further covenants and agrees to and with said party of the second part to furnish the said party of the second part all additional water required by it (in excess of the water hereinbefore contracted to be furnished free of charge for city and fire purposes) at and for the price of eight cents per one thousand gallons."

Counsel for appellant invites our attention particularly to the words "city purposes" used in the contract, and make this the basis of their contention, that it is not a "city purpose" within the meaning of the contract, to furnish water to the board of education for the use of the public schools within the city of Albuquerque, for the reason that said board is not a part of the city of Albuquerque, nor a branch of its municipal government, but that said board is a distinct and separate corporation organized under the provisions of the laws of 1891, providing a common school system for the territory of New Mexico. Counsel for appellee, on the other hand insist that "the whole tenor of the act of 1891, shows that it was the intention of the legislature to create city schools in the cities, and to make the board of education a mere instrumentality of the city for the government of the schools." Thus a very clear issue is joined upon the third assignment of error.

Whether supplying water to the board of education of the city of Albuquerque is a "city purpose" or not must be determined by our conclusion whether said board of education is simply a branch of the city or municipal government of Albuquerque, or a distinct and separate corporation. As a proper solution of the latter proposition is purely a matter of law, we will proceed to an examination of the laws of 1891, and authorities cited by counsel in their elaborate briefs.

There can be no doubt that in the enactment of the law approved February 12, 1891, and the law passed by the same legislature, approved February 26, 1891, the latter being amendatory to the former, the legislature intended to establish a comprehensive and harmonious system of public schools throughout the territory, applicable to cities, towns and country districts, and all declared to be corporations for school purposes only, with power to contract and be contracted with, sue and be sued, in case of cities and towns in the name of the board of education of the city (or town) of ———, and in outside districts as school district No. —, of the county of ———. Each of these districts, whether in city, town or country, to form a part of the territorial system of common

schools, suitable boards for the government of each being provided for, in cities and towns being called boards of education, while in other districts they are called boards of directors.

The title of the first act makes this clear, being "An act establishing common schools in the territory of New Mexico."

It is true, the words city and town, are used frequently throughout these laws of 1891, and lend color to the contention of appellee that city schools were established by them. For instance, it is provided in section 6 that "all cities and towns shall be governed by this act."

Sec. —.   "In each city and town governed by this act there shall be established and maintained a system of free common schools."

Sec. 8.   "Territory outside of city limits, but adjacent thereto, may be attached to such city or town."

Sec. 14.   Authorizes the board of education to organize and maintain a system of graded schools and establish a high school wherever, in their opinion, the educational interests of the city demand it, and to exercise control over the schools and school property of the city or town.

Sec. 22.   Provides that the board shall levy a tax not exceeding five mills on the dollar, and the city council or town trustees shall approve the same.

Sec. 29.   Provides that the board may issue bonds for erection or purchase of school buildings, school sites, etc., and section 30 provides that the mayor of the city shall call elections to vote for or against the issuance of bonds, and there are numerous other references to cities and towns in these acts.

Notwithstanding the indiscriminate use of the words cities and towns, in these laws, a careful examination of the entire acts has satisfied us that these words used in reference to the schools established in cities and towns are used in a very general sense, and were not intended to mean that schools thus referred to, were, in a legal sense, city or town schools.   We are met, of course, with the suggestion in this case, that in Albuquerque the boundaries of the city and school district are identical, and that the schools are maintained by taxes assessed

upon the same property; and further, that the city council must approve the levy of the board of education; but these suggestions may be answered from the law itself, section 8, which provides that territory outside of the city or town limits, may be annexed by the board of education for school purposes and the property of such annexed territory shall be assessed for taxes for school purposes the same as property of the inhabitants of the city, thus the boundaries are not necessarily identical, and funds used for the maintenance of schools in cities and towns, may be derived from taxes upon property outside of the city limits.    Again, the law provides that the board of education shall make the levy of taxes not exceeding five mills on the dollar for school purposes, "which levy shall be approved by the city council, and when approved, the clerk of the board shall certify it to the county clerk," etc.    The action of the council in this matter would seem to be more ministerial than otherwise.    Officers of both the city and county are called upon to perform certain duties under this act, but their services seem to be required mainly from considerations of convenience and economy.

There are many provisions of the laws of 1891, which indicate that the legislature intended to divorce, as far as possible, the schools in cities and towns from the control and government of those municipalities, and utterly inconsistent with an intent to make them a part of the city government, and under its control and management.    We have already referred to the title of the act establishing the schools as territorial corporations.    The board of education levies the taxes, and expends the money derived therefrom; and pays the teachers; it elects its own officers, except the treasurer, who acts ex officio, and makes all rules and regulations for the government of the schools.    There is also a provision that an alderman of the city can not be a member of the board of education, nor can a member of the board be an alderman. Section 10 provides that all cities and towns shall convey to the board of education all property held in the name of such city or town for school purposes, thus divesting cities and

towns of the title to all school property then owned by them, and vesting the title in the board of education. This provision was doubtless intended to apply to the independent city school of Raton, and possibly to other city schools of the territory, thus making the existing city schools a part of the territorial common school system, and exempt from the city debt. The laws of 1891 clothed these school corporations with powers inconsistent with the idea of their being a part of the city government. These boards of education may contract with the city itself in which they are located. They may also sue and be sued, and thus they are vested with power to antagonize and even sue the city, of which, it is contended, they form a part. It would be highly unreasonable to believe that the legislature intended to bring about such an anomalous state of affairs; on the contrary, most of the difficulties are removed by concluding, as we now do, that the legislature intended these school boards to be separate and distinct corporations, not municipal, but for school purposes only, whether in cities or towns or outside of them. That they are not intended to be city schools in a legal sense but were such in a most general sense, the name of the city and local agencies being utilized for reasons of convenience and economy. The fact of their location in cities and towns is immaterial, they still remain a part of the territorial school system provided for by the legislative authority.

Many of the states have adopted a system of common schools, and while some of them are not similar to our own, others are very similar, in that they are systems adopted by the state, and they are made independent of the municipal governments of the cities and towns of the state and have powers and privileges very similar to those conferred on our own schools by the laws of ·1891. These state school laws have been passed upon by the courts, and we find that the courts of the states having laws similar to our laws of 1891 sustain the view we have taken of those laws.

A school district is defined by Mr. Dillon in his work upon municipal corporations as follows:

"A school district is a governmental auxiliary of the state, and the state incorporates it that it may more effectually discharge its appointed duties; they are termed involuntary political divisions of the state or territory, created by general laws to aid in the administration of government in carrying out the universal public school system.   Their powers relate to matters of state as distinguished from municipal concern, so they are not adjuncts or agencies of municipal corporations unless the legislature creating them makes them so, and their existence may be entirely distinct from that of a municipal corporation."   1 Dillon, secs. 19, 20, 21, 22 and 23.

In the case of Michael Heller v. Phillip Stremmel, 52 Mo. 309, the court referring to the school board of the city of St. Louis, says:

"The board of president and directors of the St. Louis public schools is not a corporation created for political purposes nor is it created for the purpose of enabling the people of the district named to conduct its local, civil government, and the mere fact that its limits of jurisdiction are the same as that of the city of St. Louis, makes no difference in that particular; it is just the same as if it had constituted a township, or any other district described as a school district.   The corporation is created to take charge and control of the public schools and make rules for the management of the schools, to take possession and charge of all lands and lots which have been received for the inhabitants of St. Louis for school purposes, and to dispose of the same and apply the proceeds to purposes of education under the provisions of the act.   In fact, the corporation is created by the state to assist in carrying out the general common school system of education adopted by the state, and although the particular district is separately organized and incorporated by the legislature, it is no more a municipal corporation, than is the board of directors of any school district in the state."

In the case of Knowles v. Board of Education of the city of Topeka, Kansas, Chief Justice Norton, in rendering the opinion of the court, says:

"The board of education of the city of Topeka, of course is not a private corporation, nor is it a corporation created with the political and legislative powers like cities and towns for the local civil government and police regulations of the inhabitants of the particular district included in the boundaries of the corporation. The fact that its limits or boundaries are the same as that of the city of Topeka, makes no difference in that particular. It is just the same as if it constituted any other territorial district, described as the board of education of said district. The board of education has power to select its own officers, to make its rules and regulations, to establish a high school whenever in its opinion the educational interests of the city demand the same, and to exercise sole control over the public schools and school property of the city. The title of all property held for the use or benefit of the public schools within the territory over which the board of education has jurisdiction is vested in the board."

The case of Stroud v. The City of Stevens Point, referred to in the brief of appellee, is not in point, because in that case the schools of the city of Stevens Point were made part of the city government by the amended charter of the city. The court held that the amended charter having made the schools part of the city govenrment, the city was responsible for the debts of the schools. It is very different in the case of the schools in the city of Albuquerque. The city of Albuquerque is not responsible and can not be sued for the debts of the board of education but the board is responsible and may be sued for its own debt and on the other hand, the laws of 1891 specifically provide that school property shall be exempt from payment of city indebtedness.

The case from Michigan, Hathaway v. Sackett, 32 Mich. 101, simply decides that a village in that state could take a bequest for a high school building. There can be no doubt of this. A city or town may establish schools and accept aid for them even without specific statutory authority, unless prohibited by law, but this decision is not in conflict with our conclusion as above stated.

Passing now to the consideration of the fourth assignment of error, we find that the view we have above expressed, practically disposes of it.  If the board of education of the city of Albuquerque is not merely a branch or instrumentality of the city's government, but on the contrary is a separate corporation for school purposes, charged with the duty of defraying its own expenses, liable for its own contracts and capable of being sued, it can not well be contended, that furnishing water to this board was for "city purposes" within the meaning of that contract.  There is no pretense that the board of education was made a party to the contract; on the contrary the record shows that the board was paying the company for water for the use of the schools, the last payment being made just prior to the commencement of this suit.  The record further shows that a notice was served on the water company which was in part as follows:

WATER supply:
injunction.

"Therefore, resolved, that the city council direct that the public schools be allowed the free use of water from the supply to which the city is entitled under the contract of April 7, 1894, between the city and water company.

"And that the said Water Supply Co. be notified by the city clerk of this action, and to make no further charge for water for the schools from this date until further notice."

The above resolution was adopted by the city council on the seventh day of February, 1898, from which it appears that the contract between the city and the water company, has been in existence nearly four years before the city asserted any right to have the board of education supplied with water for the schools under the city's contract of April 7, 1894. Neither the city nor the board seem to have acted upon the construction of the contract now contended for in this court.

As to the meaning of the words "city purposes" no fixed rule can be laid down.  As was said in the case of People v. Kelly, 76 N. Y. 487, "Each case must depend largely upon its own facts."

Appellee calls our attention to a line of authorities wherein the words "city purposes" are considered, as those words are used in the new constitution of New York, which says, that no city, town or village shall "be allowed to incur any indebtedness except for city, town or village purposes." The cases cited are cases in which the question was whether or not it was a city purpose for the cities of that state to incur indebtedness for various things such for instance, as borrowing money for the construction of the New York and Brooklyn bridge, which was declared to be a city purpose, as an improvement for the benefit of all. Also it was declared to be a city purpose to construct a railroad between adjacent towns, but the court said that it would not be a city purpose to build a railroad from New York to Philadelphia; that it was a matter for judicial construction based upon the facts in each case. But in this case it is not a question of what a city may do, or what contract a city, even the city of Albuquerque, may enter into; but the question is the legal meaning and effect of the contract existing between the city and the water company, at the time this suit was commenced.

Appellees contend that the words "city purposes" have no effect whatever in this contract, that the contract would have the same meaning without them, and stating their contention in the language of counsel, it is that the city has paid for two millions of gallons of water a month, and that the city council can do what it pleases with it. If the contract did not provide that the twelve million gallons of water was to be furnished for city purposes, this contention of counsel would be correct, but it is not tenable as the contract reads. We are of the opinion that these words "for city purposes," are absolutely controlling and operate as a limitation upon the city council as to the purpose for which the twelve million gallons of water shall be used. The city undoubtedly has a right to twelve million gallons of water every six months if it has legitimate city purposes for which to use it, but only in that event. In another part

of this contract water is to be furnished "for fire purposes." Under this clause it could not be contended that the water could be used for other than fire purposes, nor could it be contended that if no necessity arose for its use for fire purposes, that the city could use it for other purposes. Now the limitation in regard to the use of water for fire purposes is no stronger than the limitation for city purposes, and it will be observed that in one clause of this contract, fire and city purposes are grouped together in one sentence, as if it was the intention to make them of equal force and effect. The contracts between cities and water, gas and electric companies, are usually of a flexible nature, and so understood by the parties, for the reason that the necessities of a city in these respects may be much greater one month than another. Take the matter of water for fire purposes as an illustration. In one month there may not be a single fire in the city, and no water at all need be furnished under the contract, but in the next month there may be disastrous fires necessitating the use of large amounts of water, so that the limitations of the purposes for which water is to be used are very important, and we so understand the limitation "for city purposes" in this contract. If the city council are the sole judges as to the purpose for which this water is to be used, could they furnish it to the mills, the factories, or the railroad at Albuquerque; could they furnish it for watering stock? We think not, so long as the words "for city purposes" are in the contract.

The board of education is a corporation distinct from the city, the title and control of the school building in the city of Albuquerque are effectually vested in this board, this board alone could make a contract for water or any other school supplies, the city has nothing whatever to do with the management of its affairs, nor is it under any obligation to furnish water or anything else for the board of education, therefore, we can not see how the furnishing of water to the board of education is a city purpose. It might as well be

contended that it was a city purpose to furnish water to the university. or the churches.

A contract very similar to the one now under consideration was elaborately considered in the courts of Missouri in the case of the National Water Works Co. of New York v. School District of Kansas City, Mo., 23 Mo. App. 227. In this case, which arose in Kansas City, the ordinance contract provided that as a part of the consideration for granting the franchise to said water company said water company should furnish pure water for said city, and it was expressly stipulated that the plaintiff should at all times thereafter supply water free of charge "for all public buildings and offices of said city." It was contended in that case, that public school buildings within the city were "public buildings of the city," within the meaning of the contract, and were entitled to water free. The court, in construing the contract, among other things said:

"The school district of Kansas City is an independent corporation in every vital particular. The title and control of the school buildings are effectually vested in the board of school directors—the school district corporation. The city government has no voice nor agency in the matter. It has nothing whatever to do with the school buildings or other property of this incorporated district. The city neither builds, owns nor controls the school houses. They are therefore, not 'public buildings' of the city."

The reasoning of the court in that case we believe to be equally applicable, in principle, to the case now under consideration.

The court below entered a final decree granting an injunction restraining the water company from withholding water from the board of education while compensation thereof was refused, and, for the reasons above stated, we are of opinion that the court below erred in granting this decree. The decree of the court below is reversed and the cause is remanded with instructions to the court below to dissolve the

injunction heretofore granted, and dismiss the case at the costs of the defendants in error.

Mills, C. J., Leland and Parker, JJ., concur; Crumpacker, J., did not sit in this case, having tried the case below.